Filed 3/10/10          NO. 4-09-0806

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE BOARD OF EDUCATION OF AUBURN ) Appeal from
COMMUNITY UNIT SCHOOL DISTRICT NO. 10, ) Circuit Court of
      Plaintiff-Appellee, ) Sangamon County
      v. ) No. 08MR590
THE ILLINOIS DEPARTMENT OF REVENUE and )
BRIAN HAMER, in His Capacity as )
Director of the Illinois Department of )
Revenue, )
      Defendants-Appellants, )
      and )
SANGAMON COUNTY; JOE AIELLO, Clerk; )
MONTGOMERY COUNTY; and SANDY ) Honorable
LEITHEISER, Clerk, ) Leo J. Zappa, Jr.,
      Defendants. ) Judge Presiding.
_____

      PRESIDING JUSTICE MYERSCOUGH delivered the opinion of
the court:

      In October 2008, the Board of Education of Auburn
Community Unit School District No. 10 (Auburn Board) filed a
complaint for declaratory judgment against the Illinois Depart-
ment of Revenue (Department) and its Director, Brian Hamer. The
Auburn Board sought a ruling that the Property Tax Extension
Limitation Law (PTELL) (35 ILCS 200/18-185 through 18-245 (West
2008)) no longer applied to the Auburn Community Unit School
District No. 10 (Auburn District). In November 2008, the com-
plaint was amended to include Sangamon County, Montgomery County,
and the clerks of both counties as defendants.

      In April 2009, the Auburn Board moved for summary
judgment. In June 2009, the Department and Hamer also moved for
summary judgment. In September 2009, the trial court granted the

Auburn Board's motion for summary judgment and denied the Department and Hamer's motion.  We reverse.

I. BACKGROUND

The Auburn District was originally located entirely within Sangamon County.  In January 2007, the Regional Board of School Trustees of Sangamon County (Regional Board) dissolved the Divernon Community Unit School District No. 13 (Divernon District) and annexed some Divernon District territory to the Auburn District.  This annexation gave the Auburn District a small amount of territory in Montgomery County such that the reconstituted Auburn District has approximately 0.3% of its total equalized assessed valuation in Montgomery County and 99.7% in Sangamon County.

In April 2008, the Sangamon County clerk's office sent correspondence to the Auburn District stating that the reconstituted Auburn District was exempt from PTELL (35 ILCS 200/18-185 through 18-245 (West 2008)).  PTELL limits the ability of units of local government to raise property taxes.  The Sangamon County clerk had previously applied PTELL when calculating the Auburn District's tax extension because Sangamon County voters approved PTELL by referendum in 1996 (35 ILCS 200/18-213 (West 1996)).  In contrast, Montgomery County has never held a referendum on PTELL.

On April 24, 2008, legal counsel for the Auburn District sent correspondence to the Department requesting an opinion on whether the reconstituted Auburn District was subject to PTELL since it now contained territory located in both a PTELL county

and a non-PTELL county. The Auburn District sought this opinion in order to facilitate the issuance of bonds for $9 million worth of improvements involving heating, ventilating, and air conditioning systems, roofing, lighting, windows, and paving at two elementary schools and one middle/high school. On August 26, 2008, deputy general counsel for the Department responded by letter stating that the Department declined to issue a formal opinion because PTELL contains "no explicit provision that clearly addresses the situation." Instead of a formal opinion, the letter provided informal guidance that PTELL still applied to the Auburn District based on the Department's reading of sections 18-213 and 18-214 of PTELL (35 ILCS 200/18-213, 18-214 (West 2008)). The last four paragraphs of the letter read as follows:

"After examining the language in PTELL it is apparent that there is no explicit provision that clearly addresses the situation. As a result, the Department declines to issue any formal opinion or ruling on your request.

However, if the Department were required to provide guidance in this matter, based on the Department's analysis of the most relevant sections (35 ILCS 200/18-213 and 18-214) in this specific circumstance, it appears the Auburn [District] remains subject to PTELL and its restrictions. Section 18-213 covers

- 3 -

referenda and the applicability of PTELL, while section 18-214 details referenda on the removal of the applicability of PTELL to non-home rule taxing districts. Neither section appears to lend support to the conclusion the Auburn [District] should no longer be subject to PTELL.

The applicability of PTELL to the Auburn [District] is further bolstered when considering the intent of the PTELL statute to provide transparency and voter participation; the fact that Sangamon County already voted to approve PTELL; and due to the fact that the vast majority of the Auburn [District] is contained within Sangamon County.

Based on the analysis contained herein, the Department's guidance is that Auburn [District] remains subject to PTELL and its restrictions."

In October 2008, the Auburn Board filed a complaint for declaratory judgment against the Department and Hamer. In November 2008, the complaint was amended to include Sangamon County, Montgomery County, and the clerks of both counties as defendants. In April 2009, the Auburn Board moved for summary judgment. In June 2009, the Department and Hamer filed a cross motion for summary judgment. In September 2009, the trial court

granted the Auburn Board's motion for summary judgment and denied the Department and Hamer's motion.

This appeal followed. The Sangamon and Montgomery County clerks are not parties to this appeal. Although Hamer is an appellant, he will not be mentioned further because his arguments are identical to those of the Department.

## II. ANALYSIS

We review the grant of summary judgment de novo. Smith v. Neumann, 289 Ill. App. 3d 1056, 1063, 682 N.E.2d 1245, 1249 (1997). De novo review is also appropriate because this case presents a question of law. People v. Bonutti, 212 Ill. 2d 182, 188-89, 817 N.E.2d 489, 493 (2004).

The Auburn Board argues PTELL no longer applies to the Auburn District based upon section 18-213 of PTELL. 35 ILCS 200/18-213 (West 2008). Section 18-213 lays out the requirements for the initial implementation of PTELL. Section 18-213 provides as follows:

"Referenda on applicability of the [PTELL].

(a) The provisions of this [s]ection do not apply to a taxing district subject to this [l]aw because a majority of its 1990 equalized assessed value is in a county or counties contiguous to a county of 3,000,000 or more inhabitants, or because a majority of its 1994 equalized assessed value is in an

- 5 -

affected county and the taxing district was not subject to this [l]aw before the 1995 levy year.

(b) The county board of a county that is not subject to this [l]aw may, by ordinance or resolution, submit to the voters of the county the question of whether to make all non-home rule taxing districts that have all or a portion of their equalized assessed valuation situated in the county subject to this [l]aw in the manner set forth in this [s]ection.

For purposes of this [s]ection only:

'Taxing district' has the same meaning provided in [s]ection 1-150.

'Equalized assessed valuation' means the equalized assessed valuation for a taxing district for the immediately preceding levy year.

(c) The ordinance or resolution shall request the submission of the proposition at any election, except a consolidated primary election, for the purpose of voting for or against making the [PTELL] applicable to all non-home rule taxing districts that have all or a portion of their equalized assessed

valuation situated in the county.

The question shall be placed on a separate ballot and shall be in substantially the following form:

Shall the [PTELL] (35 ILCS 200/18-185 through 18-245), which limits annual property tax extension increases, apply to non-home rule taxing districts with all or a portion of their equalized assessed valuation located in (name of county)?

Votes on the question shall be recorded as 'yes' or 'no'.

(d) The county clerk shall order the proposition submitted to the electors of the county at the election specified in the ordinance or resolution. If part of the county is under the jurisdiction of a board or boards of election commissioners, the county clerk shall submit a certified copy of the ordinance or resolution to each board of election commissioners, which shall order the proposition submitted to the electors of the taxing district within its jurisdiction at the election specified in the ordinance or

resolution.

(e)(1) With respect to taxing districts having all of their equalized assessed valuation located in the county, if a majority of the votes cast on the proposition are in favor of the proposition, then this [l]aw becomes applicable to the taxing district beginning on January 1 of the year following the date of the referendum.

(2) With respect to taxing districts that meet all the following conditions this [l]aw shall become applicable to the taxing district beginning on January 1, 1997. The districts to which this paragraph (2) is applicable

(A) do not have all of their equalized assessed valuation located in a single county,

(B) have equalized assessed valuation in an affected county,

(C) meet the condition that each county, other than an affected

county, in which any of the equalized assessed valuation of the taxing district is located has held a referendum under this [s]ection at any election, except a consolidated primary election, held prior to the effective date of this amendatory [a]ct of 1997, and

(D) have a majority of the district's equalized assessed valuation located in one or more counties in each of which the voters have approved a referendum under this [s]ection prior to the effective date of this amendatory [a]ct of 1997. For purposes of this [s]ection, in determining whether a majority of the equalized assessed valua-

tion of the taxing district is located in one or more counties in which the voters have approved a referendum under this [s]ection, the equalized assessed valuation of the taxing district in any affected county shall be included with the equalized assessed value of the taxing district in counties in which the voters have approved the referendum.

(3) With respect to taxing districts that do not have all of their equalized assessed valuation located in a single county and to which paragraph (2) of subsection (e) is not applicable, if each county other than an affected county in which any of the equalized assessed valuation of the taxing district is located has held a referendum under this [s]ection

at any election, except a consolidated primary election, held in any year and if a majority of the equalized assessed valuation of the taxing district is located in one or more counties that have each approved a referendum under this [s]ection, then this [l]aw shall become applicable to the taxing district on January 1 of the year following the year in which the last referendum in a county in which the taxing district has any equalized assessed valuation is held.  For the purposes of this [l]aw, the last referendum shall be deemed to be the referendum making this [l]aw applicable to the taxing district.  For purposes of this [s]ection, in determining whether a majority of the equalized assessed valuation of the taxing district is located in one or more counties that have approved a referendum under this [s]ection, the equalized assessed valuation of the taxing

district in any affected county shall be included with the equalized assessed value of the taxing district in counties that have approved the referendum.

(f) Immediately after a referendum is held under this [s]ection, the county clerk of the county holding the referendum shall give notice of the referendum having been held and its results to all taxing districts that have all or a portion of their equalized assessed valuation located in the county, the county clerk of any other county in which any of the equalized assessed valuation of any taxing district is located, and the [Department].  After the last referendum affecting a multi-county taxing district is held, the [Department] shall determine whether the taxing district is subject to this [l]aw and, if so, shall notify the taxing district and the county clerks of all of the counties in which a portion of the equalized assessed valuation of the taxing district is located that, beginning the following January 1, the taxing district is subject to this [l]aw. For each taxing district subject to paragraph

(2) of subsection (e) of this [s]ection, the [Department] shall notify the taxing district and the county clerks of all of the counties in which a portion of the equalized assessed valuation of the taxing district is located that, beginning January 1, 1997, the taxing district is subject to this [l]aw.

(g) Referenda held under this [s]ection shall be conducted in accordance with the Election Code."  35 ILCS 200/18-213 (West 2008).

Therefore, in order to implement PTELL in a multicounty district, each county must hold a referendum, and the county having the majority of the equalized assessed valuation of the taxing district must vote to approve PTELL.  35 ILCS 200/18-213(e)(3) (West 2008).  The Auburn District was undisputedly subject to PTELL prior to the annexation.  The Auburn Board, however, argues that once the annexation made the Auburn District a two-county taxing district, PTELL no longer applies because Montgomery County has not held a referendum to implement PTELL as required by section 18-213(e)(3).

The Department counters that if Montgomery County held a PTELL referendum, regardless of the vote's outcome, PTELL would continue to apply to the Auburn District because Montgomery County property only represents a tiny minority of the total equalized assessed valuation of the Auburn District.  The

- 13 -

Department also contends that section 18-213 only applies to the initial imposition of PTELL, and section 18-214 of PTELL provides the sole method for the subsequent removal of PTELL.

The Department also argues PTELL applies to the Auburn District based upon section 18-214 of PTELL because there has not been a referendum to remove the PTELL from the Auburn District. 35 ILCS 200/18-214 (West 2008). Section 18-214 establishes the procedure for removing PTELL via referendum.

"Referenda on removal of the applicability of the [PTELL] to non-home rule taxing districts.

* * *

(b) For purposes of this [s]ection only:

'Taxing district' means any non-home rule taxing district that became subject to this [l]aw under [s]ection 18-213 of this [l]aw.

'Equalized assessed valuation' means the equalized assessed valuation for a taxing district for the immediately preceding levy year.

(c) The county board of a county that became subject to this [l]aw by a referendum approved by the voters of the county under [s]ection 18-213 may, by ordinance or resolution, in the manner set forth in this

[s]ection, submit to the voters of the county the question of whether this [l]aw applies to all non-home rule taxing districts that have all or a portion of their equalized assessed valuation situated in the county in the manner set forth in this [s]ection.

(d) The ordinance or resolution shall request the submission of the proposition at any election, except a consolidated primary election, for the purpose of voting for or against the continued application of the [PTELL] to all non-home rule taxing districts that have all or a portion of their equalized assessed valuation situated in the county.

The question shall be placed on a separate ballot and shall be in substantially the following form:

Shall the [PTELL] (35 ILCS 200/18-185 through 35 ILCS 200/18-245), which limits annual property tax extension increases, apply to non-home rule taxing districts with all or a portion of their equalized assessed valuation located in (name of county)?

Votes on the question shall be recorded as

'yes' or 'no'.

(e) The county clerk shall order the proposition submitted to the electors of the county at the election specified in the ordinance or resolution.  If part of the county is under the jurisdiction of a board or boards of election commissioners, the county clerk shall submit a certified copy of the ordinance or resolution to each board of election commissioners, which shall order the proposition submitted to the electors of the taxing district within its jurisdiction at the election specified in the ordinance or resolution.

(f) With respect to taxing districts having all of their equalized assessed valuation located in one county, if a majority of the votes cast on the proposition are against the proposition, then this [l]aw shall not apply to the taxing district beginning on January 1 of the year following the date of the referendum.

(g) With respect to taxing districts that do not have all of their equalized assessed valuation located in a single county, if both of the following conditions are met,

then this [l]aw shall no longer apply to the taxing district beginning on January 1 of the year following the date of the referendum.

(1) Each county in which the district has any equalized assessed valuation must either, (i) have held a referendum under this [s]ection, (ii) be an affected county, or (iii) have held a referendum under [s]ection 18-213 at which the voters rejected the proposition at the most recent election at which the question was on the ballot in the county.

(2) The majority of the equalized assessed valuation of the taxing district, other than any equalized assessed valuation in an affected county, is in one or more counties in which the voters rejected the proposition. For purposes of this [s]ection, in determining whether a majority of the equalized assessed valuation of the taxing district is located in one or more counties in which the vot-

ers have rejected the proposition under this [s]ection, the equalized assessed valuation of any taxing district in a county which has held a referendum under [s]ection 18-213 at which the voters rejected that proposition, at the most recent election at which the question was on the ballot in the county, will be included with the equalized assessed value of the taxing district in counties in which the voters have rejected the referendum held under this [s]ection.

(h) Immediately after a referendum is held under this [s]ection, the county clerk of the county holding the referendum shall give notice of the referendum having been held and its results to all taxing districts that have all or a portion of their equalized assessed valuation located in the county, the county clerk of any other county in which any of the equalized assessed valuation of any such taxing district is located, and the [Department]. After the last referendum affecting a multi-county taxing district is

held, the [Department] shall determine whether the taxing district is no longer subject to this [l]aw and, if the taxing district is no longer subject to this [l]aw, the [Department] shall notify the taxing district and the county clerks of all of the counties in which a portion of the equalized assessed valuation of the taxing district is located that, beginning on January 1 of the year following the date of the last referendum, the taxing district is no longer subject to this [l]aw."  35 ILCS 200/18-214 (West 2008).

Section 18-214(g) specifies two requirements for removing PTELL in taxing districts having equalized assessed valuation located in two counties, such as the Auburn District. 35 ILCS 200/18-214(g) (West 2008).  First, each county must hold a referendum and put the issue before the voters.  35 ILCS 200/18-214(g)(1)(i) (West 2008).  Second, the county having the majority of the equalized assessed valuation of the taxing district must vote to reject PTELL.  35 ILCS 200/18-214(g)(2) (West 2008).  Defendant argues neither Sangamon County nor Montgomery County have conducted referenda to remove PTELL. Because such referenda have not taken place, the Department contends PTELL still applies to the Auburn District.

The Department further asks us to defer to its inter-

pretation of PTELL. Where a statute is ambiguous, substantial weight and deference should be given to the interpretation of the administrative agency charged with enforcing the statute. Reed v. Kusper, 154 Ill. 2d 77, 86, 607 N.E.2d 1198, 1203 (1992). In this instance, however, the statute is not ambiguous. Instead, as the Department itself stated, PTELL contains "no explicit provision that clearly addresses the situation." Further, the Department has not promulgated regulations, or even a formal opinion letter, to which we could defer. Nonetheless, we agree with the Department that nothing in the statute addresses the current situation, that section 18-213 only applies to the initial imposition of PTELL and section 18-214 provides the sole method of removal of PTELL. However, sections 18-213 and 18-214 contain no authority for applying the PTELL to the Montgomery County property annexed into the Auburn District.

The primary rule of statutory construction is to give effect to the intent of the legislature. People v. Pack, 224 Ill. 2d 144, 147, 862 N.E.2d 938, 940 (2007). The plain and ordinary meaning of the statutory language provides the best means of determining legislative intent. Reda v. Advocate Health Care, 199 Ill. 2d 47, 55, 765 N.E.2d 1002, 1007 (2002). When the statutory language is plain and unambiguous, we will not add exceptions, limitations, or conditions that conflict with the intent of the legislature. Rosewood Care Center, Inc. v. Caterpillar, Inc., 226 Ill. 2d 559, 567, 877 N.E.2d 1091, 1096 (2007). We will also not add provisions that are not contained in the

statute.  <u>People v. Lewis</u>, 223 Ill. 2d 393, 402, 860 N.E.2d 299, 305 (2006).

The purpose of PTELL is to give citizens greater control over their taxes.  <u>Acme Markets, Inc. v. Callanan</u>, No. 106198, slip op. at 11 (October 29, 2009), __ Ill. 2d __, __, __ N.E.2d __, __.  "Where, as here, the requirements of a statute are designed for the protection of taxpayers, those provisions are mandatory ***."  <u>Acme Markets</u>, slip op. at 11, __ Ill. 2d at __, __ N.E.2d at __.

The legislature has provided a specific referendum mechanism in section 18-214 for the removal of PTELL in districts where each county has held a referendum.  35 ILCS 200/18-214 (West 2008).  The mandated referendum for the removal of PTELL from the Auburn District has not taken place in Sangamon County. The statutory language in section 18-214 does not authorize a removal referendum for the annexed property of the district in Montgomery County.  Section 18-214 applies only to a taxing district which has become subject to PTELL pursuant to section 18-213.

"(b) For purposes of this [s]ection

only:

'Taxing district' means any non-home

rule taxing district that became subject to

this [l]aw under [s]ection 18-213 of this

[l]aw."  35 ILCS 200/18-214(b) (West 2008).

In other words, only Sangamon County can conduct a referendum to

- 21 -

remove itself from PTELL here because it adopted PTELL pursuant to a referendum. (Counties which have rejected PTELL can also conduct a removal referendum. "Each county in which the district has any equalized assessed valuation must either, (i) have held a referendum under this [s]ection, (ii) be an affected county [(not applicable here)], or (iii) have held a referendum under [s]ection 18-213 at which the voters rejected the proposition at the most recent election at which the question was on the ballot in the county." 35 ILCS 5/18-214(g)(1) (West 2008).)

Sections 18-213 and 18-214 simply do not contain a revocation provision for districts which acquire property via annexation, and this court cannot read such a provision into the statute absent statutory authority. The legislature addressed the annexation of property to a district in section 18-225. 35 ILCS 200/18-225 (West 2008) (addressing the calculation of the limiting rate when property is annexed or disconnected but not addressing the multicounty situation raised in this case). Had the legislature intended to permit the removal of PTELL via annexation, without a vote of the taxpayers, the legislature would have done so.

The people of Sangamon County voted to implement PTELL, and the voters of Montgomery County have not voted on PTELL. Only public referenda in Montgomery County to adopt or reject then remove PTELL and/or a referendum in Sangamon County to remove PTELL will change the PTELL status of these counties. Therefore, that portion of the Auburn District located within

- 22 -

Sangamon County will remain subject to PTELL, and that portion of the Auburn District located within Montgomery County shall not be subject to PTELL.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

STEIGMANN and APPLETON, JJ., concur.