Docket Nos. 110395, 110422 cons.

IN THE

SUPREME COURT

OF

THE STATE OF ILLINOIS

---

THE BOARD OF EDUCATION OF AUBURN COMMUNITY
UNIT SCHOOL DISTRICT NO. 10, Appellant and Cross-Appellee,
v. THE DEPARTMENT OF REVENUE *et al*., Appellees and Cross-
Appellants.

*Opinion filed May 19, 2011.*

JUSTICE THEIS delivered the judgment of the court, with
opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, Garman,
Karmeier, and Burke concurred in the judgment and opinion.

**OPINION**

The issue in this case is whether the Property Tax Extension
Limitation Law (PTELL) (35 ILCS 200/18–185 *et seq.* (West 2006))
applies to all portions of the Auburn Community Unit School District
No. 10 (Auburn District) after territory in a county that has not
considered a PTELL referendum was annexed into the Auburn
District. For the reasons that follow, we hold that the entire Auburn
District remains subject to the PTELL.

BACKGROUND

On January 31, 2007, the Regional Board of School Trustees of

Sangamon County (Regional Board), pursuant to article 7 of the School Code (105 ILCS 5/7–01 *et seq.* (West 2006)), dissolved the Divernon Community Unit School District No.13 (Divernon District), which was partially located in Montgomery County, and annexed almost all of the Divernon District territory to the Auburn District. Prior to the annexation, the Auburn District was located entirely within Sangamon County. The annexation gave the Auburn District a small amount of territory in Montgomery County such that the reconstituted district has approximately 99.7% of its equalized assessed valuation (EAV) in Sangamon County with the remaining 0.3% in Montgomery County. Sangamon County voters approved PTELL by referendum in November 1996 and, pursuant to section 18–213(e)(1) (35 ILCS 200/18–213(e)(1) (West 1996)), PTELL became applicable to all non-home-rule taxing districts located exclusively within Sangamon County on January 1, 1997, including the Auburn District. Montgomery County has not considered a PTELL referendum.

The purpose of PTELL is to provide greater citizen control over the levy of the taxes that citizens are required to pay. *Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29, 42 (2009). The PTELL limits the increases in property tax extensions and amounts levied by taxing districts in non-home-rule counties in which PTELL is applicable. 35 ILCS 200/18–195 (West 2006). A taxing district subject to PTELL may not ordinarily extend taxes at a rate that exceeds the previous year's extension by more than 5%, or the percentage increase in the Consumer Price Index (CPI), whichever is less, without referendum approval. 35 ILCS 200/18–205 (West 2006). County boards of counties other than Cook and the collar counties[1] decide whether or not to allow voters to choose by referendum if property tax extensions should be limited. 35 ILCS 200/18–213(a), (b) (West 2006). A PTELL referendum may be placed on the ballot at any election other than a consolidated primary election if the county board passes an ordinance or resolution within the required time period before the election. 35 ILCS 200/18–213(b), (c) (West 2006). After the last referendum affecting a multicounty taxing district is held, the

[1]PTELL automatically applies to all non-home-rule taxing districts in Cook and the collar counties. 35 ILCS 200/18–185 (West 2006).

Department of Revenue is responsible for determining whether the taxing district is subject to PTELL and notifying the county clerks of all the counties in which the taxing district is located if the district is subject to PTELL. 35 ILCS 200/18–213(f) (West 2006).

Subsequent to the annexation in 2007, the Auburn District intended to finance improvements at two elementary schools and one middle/high school through the issuance of bonds. The Auburn District was unable to proceed with its plans, however, because it was unclear whether bonds could be issued to finance the project over the debt extension limitation that was in place under PTELL for the EAV located in Sangamon County prior to the annexation. On April 3, 2008, the Sangamon County clerk's office informed the Auburn District that it was treating the reconstituted district as a non-PTELL district for purposes of calculating the district's aggregate tax extension. On April 24, 2008, in connection with the planned bond measure, counsel for the Auburn District sent a letter to the Department of Revenue (Department) seeking an opinion as to whether the reconstituted Auburn District was subject to PTELL.

On August 26, 2008, the Department declined to issue a formal opinion or ruling because it concluded that the statute does not contain an explicit provision that addresses the situation. The Department nonetheless advised the Auburn District that, based upon its analysis of sections 18–213 and 18–214 (35 ILCS 200/18–213, 18–214 (West 2006)), the taxing district remains subject to PTELL and its restrictions. The Department concluded that the applicability of PTELL to the district is consistent with the intent of the PTELL statute to provide transparency and voter participation. The Department emphasized that Sangamon County already voted to approve PTELL and that the vast majority of the district is contained within Sangamon County.

In October 2008, the board of education of Auburn Community Unit School District No.10 (Auburn board) filed a complaint for declaratory judgment in the circuit court of Sangamon County against the Department and Brian Hamer, the Director of Revenue (hereafter Department). The Auburn board sought a declaration that PTELL no longer applied to the Auburn District following the annexation of territory which resulted in the district obtaining some EAV in a county that has not considered a PTELL referendum. In November 2008, the

Auburn board amended its complaint to include Sangamon County, Montgomery County, and the clerks of both counties as defendants. In April 2009, the Auburn board moved for summary judgment. Thereafter, the Department filed a cross-motion for summary judgment. The trial court entered summary judgment on behalf of the Auburn board after concluding that under the plain language of section 18–213, PTELL no longer applied to the Auburn District because Montgomery County has never held a PTELL referendum. The Department was the only defendant that appealed.

The appellate court disagreed with the circuit court and concluded that sections 18–213 and 18–214 do not contain a revocation provision for a taxing district that acquires territory through annexation. 398 Ill. App. 3d 629, 637. The appellate court held that section 18–214 provides a specific mechanism for the removal of PTELL and that the mandated referendum for the removal of PTELL from the Auburn District had not taken place in Sangamon County. *Id.* The appellate court also found that there is no authority under section 18–213 for applying PTELL to the Montgomery County territory that was annexed. *Id.* The appellate court concluded that "[o]nly public referenda in Montgomery County to adopt or reject then remove PTELL and/or a referendum in Sangamon County to remove PTELL will change the PTELL status of these counties." *Id.* at 638. Consequently, the appellate court held that the portion of the Auburn District located within Sangamon County would be subject to PTELL, while the portion in Montgomery County would not. *Id.*

The Auburn board and the Department both filed petitions for leave to appeal that were allowed by this court, which consolidated the cases. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). We apply a *de novo* standard of review to issues of statutory interpretation and summary judgment rulings. *First American Bank Corp. v. Henry*, 239 Ill. 2d 511, 515 (2011).

ANALYSIS

At issue is whether the Auburn District remains subject to PTELL following the annexation. The Auburn board and the Department acknowledge that there is no specific provision in the PTELL statutory framework that addresses the consequence of a PTELL

taxing district acquiring territory via annexation in a county that has not considered PTELL by referendum. The parties both argue that sections 18–213 and 18–214 of the statute should govern our determination of the issue. The Auburn board contends that PTELL does not apply to the entire Auburn District following the annexation because the statute requires that each of the counties in which any of the taxing district's EAV is located have held a PTELL referendum, and Montgomery County has not done so. The Department relies upon the same provisions and argues that once PTELL became applicable to the Auburn District prior to the annexation under section 18–213, the only way to remove PTELL is under the requirements found in section 18–214, which have not occurred. The parties agree that there is no basis in the statute for splitting a taxing district along county lines and applying PTELL to only one portion of the district, as the appellate court did.

We begin our analysis within a familiar framework. The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006). This court has long held that the best indication of this intent remains the language of the statute, which must be given its plain and ordinary meaning. *Id.* A statute must be read in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. *Board of Education, Joliet Township High School District No. 204 v. Board of Education, Lincoln Way Community High School District No. 210*, 231 Ill. 2d 184, 198 (2008). This court, when interpreting a statute, will presume that the legislature did not intend absurdity, inconvenience, or injustice. *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 195 (1992).

Section 18–213 sets forth the referenda process on the applicability of PTELL. 35 ILCS 200/18–213 (West 2006). The county board of a county that is not subject to PTELL may, by ordinance or resolution, submit to the voters of the county the question of whether to make all non-home-rule taxing districts that have all or a portion of their EAV situated in the county subject to PTELL. 35 ILCS 200/18–213(b) (West 2006). If the county board so decides, the question shall be placed on a separate ballot and shall be in substantially the following form:

"Shall the Property Tax Extension Limitation Law (35

ILCS 200/18–185 through 18–245), which limits annual property tax extension increases, apply to non-home rule taxing districts with all or a portion of their equalized assessed valuation located in (name of county)?" 35 ILCS 200/18–213(c) (West 2006).

Section 18–213(e)(1), relied upon by the Department, provides with respect to taxing districts that have all of their EAV located in the county:

"[I]f a majority of the votes cast on the proposition are in favor of the proposition, then this Law *becomes applicable to the taxing district* beginning on January 1 of the year following the date of the referendum." (Emphasis added.) 35 ILCS 200/18–213(e)(1) (West 2006).

Section 18–213(e)(3), relied upon by the Auburn board, provides, in relevant part, with respect to taxing districts that do not have all of their EAV located in a single county:

"[I]f *each county* \*\*\* in which any of the [EAV] of the taxing district is located has held a referendum under this Section at any election, except a consolidated primary election, held in any year and if a majority of the [EAV] of the taxing district is located in one or more counties that have each approved a referendum under this Section, then this Law shall become applicable to the taxing district on January 1 of the year following the year in which the last referendum in a county in which the taxing district has any [EAV] is held. For the purposes of this Law, the last referendum shall be deemed to be the referendum making this Law applicable to the taxing district." (Emphasis added.) 35 ILCS 200/18–213(e)(3) (West 2006).

A "[t]axing district" in section 18–213 has the same meaning as provided in section 1–150. 35 ILCS 200/18–213(b) (West 2006). Section 1–150 defines a taxing district as "[a]ny unit of local government, school district or community college district with the power to levy taxes." 35 ILCS 200/1–150 (West 2006). This would include the Auburn District, a school district with the power to levy taxes under the School Code. See 105 ILCS 5/17–2 (West 2006) (the school board of any district having a population of less than 500,000

inhabitants may levy a tax annually upon all the taxable property of the district).

Section 18–213(e)(1), by its plain language, addresses the initial imposition of PTELL, and provides that if a taxing district has all of its EAV in the county that has held a PTELL referendum, then PTELL "becomes applicable" to the taxing district beginning on January 1 of the year following the referendum. PTELL became applicable to the Auburn District on January 1, 1997, after a successful referendum in Sangamon County in 1996, because all of the taxing district's EAV was located in that county at the time. Section 18–213 does not contain any provision for reexamination of such an existing taxing district's PTELL status because of a subsequent change in the district's boundaries. Therefore, once PTELL became applicable to the Auburn District in 1997, section 18–213, which sets forth the referenda process for the initial imposition of PTELL, had no further relevance in determining the district's PTELL status because it is a taxing district that is already subject to the law.

As recognized by the parties, the Regional Board did not create a new school district when it dissolved the Divernon District and annexed the majority of the territory to the Auburn District. The Regional Board acted under section 7–11 of the School Code, which permits, in relevant part, a regional board of school trustees to attach the territory of a dissolved school district to one or more existing school districts. See 105 ILCS 5/7–11 (West 2006). Consequently, while the boundaries of the district changed, the Auburn District itself is the same district under the School Code as it was in 1997, when PTELL became applicable to taxing districts wholly located within Sangamon County. Because the Auburn District is not a new school district for purposes of the School Code, we find no basis to conclude that it is somehow a new taxing district under section 18–213.

We are therefore unpersuaded by the Auburn board's reliance on section 18–213(e)(3) for the proposition that based on the district's current geographical boundaries, each county must consider a PTELL referendum before the law may "become applicable" to the district. Section 18–213(e)(3) does not apply to the Auburn District because at the time PTELL became applicable to the district, it only had EAV located in Sangamon County. We reiterate that there is no provision in section 18–213 for the reexamination of an existing taxing district's

-7-

PTELL status. The only mechanism for removing PTELL from such an existing taxing district is found in section 18–214.

Simply stated, the annexation of territory by the Regional Board had no cognizable effect under the PTELL statutory framework on the Auburn District. The post-annexation Auburn District is the same school district with the power to levy taxes that became subject to PTELL in 1997. Consequently, because PTELL was already applicable to the Auburn District at the time of the annexation, it could only be removed from the district pursuant to the removal referendum process found in section 18–214.

Section 18–214 provides for the removal of PTELL from any non-home-rule taxing district that became subject to the law under section 18–213 of PTELL. 35 ILCS 200/18–214(b) (West 2006). The county board of a county that became subject to PTELL by referendum may again ask its voters using the same ballot question whether PTELL shall apply to non-home-rule taxing districts with all or a portion of their EAV in that county. 35 ILCS 200/18–214(c), (d) (West 2006). Section 18–214(g) then provides, in pertinent part, with respect to taxing districts that do not have all of their EAV located in a single county:

> "[I]f both of the following conditions are met, then this Law shall no longer apply to the taxing district beginning on January 1 of the year following the date of the referendum.
>
> > (1) *Each county* in which the district has any [EAV] must either, (i) have held a referendum under this Section, (ii) be [Cook or a collar county], or (iii) have held a referendum under Section 18–213 at which the voters rejected the proposition at the most recent election at which the question was on the ballot in the county.
> >
> > (2) The majority of the [EAV] of the taxing district, other than any [EAV in Cook or a collar county], is in one or more counties in which *the voters rejected* the proposition." (Emphases added.) 35 ILCS 200/18–214(g) (West 2006).

Because the Auburn District has not met either of these removal requirements contained in section 18–214(g), PTELL continues to apply to the entire district.

We also find the appellate court erred by splitting the Auburn District and applying PTELL to only one portion of the taxing district. Throughout the PTELL statute, taxing districts, including those that cross county lines, are treated as a single entity. See, *e.g.*, 35 ILCS 200/18–190 (West 2006) (provides that all taxing districts subject to this law are authorized to seek referendum approval of each proposition described and set forth in this section); 35 ILCS 200/18–205 (West 2006) (a taxing district may increase its extension limitation for one or more levy years if that taxing district holds a referendum before the applicable date); 35 ILCS 200/18–213(f), 18–214(h) (West 2006) (requires the Department, after the last referendum affecting a multicounty taxing district is held, either to adopt or rescind PTELL, to determine whether the taxing district is subject to the law). Most importantly, the only two sections of the statute that specifically address referenda on the applicability and removal of PTELL, sections 18–213 and 18–214, treat taxing districts as a singular entity throughout. See 35 ILCS 200/18–213, 18–214 (West 2006). We also note, as recognized by the parties, that splitting a taxing district, and applying PTELL to only one portion, not only violates the statute, but would create serious implementation problems for county clerks and taxing districts that are not addressed in the statute.

We emphasize that our interpretation of the statute is consistent with the legislative purpose of PTELL to provide greater citizen control over the property taxes that citizens are required to pay. As previously recognized, approximately 99.7% of the Auburn District's EAV in located in Sangamon County, where voters have already approved PTELL. We recognize that citizens in Montgomery County now make up a portion of the Auburn District and have not considered PTELL by referendum. Going forward, however, Montgomery County voters will have input on the taxing district's PTELL status, like any other multicounty taxing district. Under the Auburn District's current configuration, PTELL cannot be removed from the taxing district, pursuant to the requirements contained in section 18–214, without the consideration of a PTELL referendum in Montgomery County. Our interpretation also avoids the possibility that territory could be annexed by a regional board from a county that has not considered PTELL, to a taxing district that is subject to the

law, simply to permit the district to escape PTELL's restrictions, without any referenda on its removal being presented to the voters.

For the foregoing reasons, we hold that the PTELL continues to apply to the Auburn District in its entirety.

## CONCLUSION

The judgments of the appellate court and the circuit court are reversed.

Appellate court judgment reversed;
circuit court judgment reversed.