GOLF TRUST OF AMERICA, L.P., *et al.*, Plaintiffs-Appellants, v. CAROL A. SOAT, Jo Daviess County Treasurer and *ex officio* County Collector, Defendant-Appellee.

Second District No. 2—03—1082

Opinion filed January 18, 2005.

334

David D. Albee, Jr., of Galena, for appellants.

Terry M. Kurt, State's Attorney, of Galena (Norbert J. Goetten and Patrick Delfino, both of State's Attorneys Appellate Prosecutor's Office, of counsel), and David O. Edwards and Christopher E. Sherer, both of Giffin, Winning, Cohen & Bodewes, P.C., of Springfield, for appellee.

JUSTICE McLAREN delivered the opinion of the court.

Plaintiffs, Golf Trust of America, L.P., Eagle Ridge Land Development, LLC, and Eagle Ridge Lease Co., LLC (collectively, objectors), appeal from the order of the trial court entering judgment in favor of defendant, Carol A. Soat, treasurer and *ex officio* county collector of Jo Daviess County. We affirm.

Objectors own property commonly known as Eagle Ridge Inn and Resort in Jo Daviess County. Objectors paid all the extended real estate taxes on the subject property for 1999 but also filed an assessed valuation complaint for the year with the Jo Daviess County Board of Review, which reduced the assessed value from $6,000 per acre to $4,000 per acre. Objectors then filed a tax objection complaint in the trial court in November 2000 and subsequently sought to amend the complaint to include the 2000 and 2001 tax years, for which objectors also paid taxes and filed complaints. This proposed amendment was denied by the trial court. However, the trial court subsequently allowed objectors to proceed to trial on all three tax years. Following a bench trial, the trial court found in favor of Soat, and this appeal followed.

Objectors first contend that the trial court erred in its rulings regarding their request to admit facts, filed pursuant to Supreme Court Rule 216(a) (134 Ill. 2d R. 216(a)). Objectors served their request on the office of the State's Attorney of Jo Daviess County on May 13, 2002. The response was not delivered to objectors until June 15, 2002, 33 days later. According to Supreme Court Rule 216(c), matters of fact that are the subject of a request to admit are admitted if no response is served within 28 days. See 134 Ill. 2d R. 216(c). Objectors sought summary judgment and argued that all the facts contained in their request were admitted, as the response was not timely filed. The trial court allowed Soat's response to stand and later allowed amendment of the response. The court subsequently denied objectors' motion for summary judgment.

■ Objectors now argue that the trial court failed to enforce Supreme Court Rule 216(c) by allowing Soat to file her response late and subsequently amend her response. We disagree. Section 23—15(a) of the Property Tax Code (Code) provides that, once a tax objection complaint is filed, "[n]o appearance or answer by the county collector to the tax objection complaint, *nor any further pleadings*, need be filed." (Emphasis added.) 35 ILCS 200/23—15(a) (West 2002). Objectors argue that section 23—15(a) is irrelevant because a response to a request to admit is not a pleading.

A pleading is defined as, "A formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allega-

tions, claims, denials, or defenses." Black's Law Dictionary 1191 (8th ed. 2004). The purpose of a pleading is to present, define, and narrow the issues and limit the proof needed at trial. *People ex rel. Fahner v. Carriage Way West, Inc.*, 88 Ill. 2d 300, 307 (1981). A pleading produces an issue asserted by one side and denied by the other so that a trial may determine the actual truth. *Fahner*, 88 Ill. 2d at 307-08.

There can be no doubt but that objectors' request to admit and Soat's response were pleadings. A request to admit seeks to compel the opposing party to respond to the factual allegations made in the request—to either admit or deny the allegations. The purpose of a request to admit is to establish some of the material facts in the case without the necessity of formal proof at trial. *Szczeblewski v. Gossett*, 342 Ill. App. 3d 344, 349 (2003). Such a request is not designed to produce evidence but to limit the issues at trial and withdraw admitted facts from contention. *Ellis v. American Family Mutual Insurance Co.*, 322 Ill. App. 3d 1006, 1010 (2001). Because a response to a request to admit is a pleading, Soat was not required, pursuant to section 23—15(a), to file a response. In the absence of a requirement that a response be filed, we cannot conclude that any response that was filed was untimely and would invoke the strictures of Supreme Court Rule 216(c). We find no error here.

Objectors next contend that the subject parcels were improperly reassessed in 1999. According to objectors, 1999 was not a general assessment year for the subject property and there was nothing to require a reassessment in a non-general-reassessment year.

In a county with fewer than 3 million inhabitants, an assessor may in any year revise and correct an assessment "as appears to be just." 35 ILCS 200/9—75 (West 2000). This court has previously held that an assessor does not have the authority to revise *or* correct; such an adjustment can be made only to cure an incorrect assessment from the quadrennial year or to reflect changes made to the property. See *Albee v. Soat*, 315 Ill. App. 3d 888, 891 (2000). Objectors argue that the 1998 assessment was correct; therefore, there was no valid basis for the 1999 reassessment, as there was nothing to be corrected. Objectors' brief cites mainly to the request to admit for "proof" of their allegation that the 1998 valuation of the subject parcels was correct and not in need of correction. However, we have already concluded that Soat was not required to respond to that pleading. Therefore, the late answer is not deemed an admission of that allegation. Furthermore, in her answer, Soat specifically denied that the 1998 assessed valuations were correct.

At trial, Nancy Miller, supervisor of assessments and chief county assessment officer of Jo Daviess County, testified that the general as-

sessment year for the property in question was 1997. However, the Guilford Township assessor "was not doing any of his work," so the job of reassessing the Guilford Township properties fell to Miller and her staff. Miller published the assessments for 1997 but was unable to actually reassess all the properties, including those at issue here, until 1999. It was in 1999 that Miller discovered "a considerable amount" of improvements that had not been assessed before.

■ This testimony clearly shows that the 1999 reassessment was done to revise and correct the general reassessment that had not been completed by the township assessor. A trial court need not make any findings of fact, and the failure to make a specific finding is not grounds for reversal; instead, in reviewing a judgment, this court will assume that all issues and controverted facts were found in favor of the prevailing party. *McMahon v. Chicago Mercantile Exchange*, 221 Ill. App. 3d 935, 951 (1991). The question before us, then, is not whether the trial court made a specific finding, but whether its final determination is correct. *McMahon*, 221 Ill. App. 3d at 951. Here, the trial court's overruling of the tax objection, based upon Miller's testimony, is not against the manifest weight of the evidence; therefore, the 1999 reassessment was permissible pursuant to section 9—75 of the Code. We find no error here.

■ Objectors next contend that Soat failed to properly publish the list of assessments and that such failure "vitiates the tax resulting from the increase in assessed valuations." Section 12—10 of the Code (applicable to counties with fewer than 3 million inhabitants) requires that, in years other than years of general reassessment, the chief county reassessment officer must publish a list of property for which assessments have been added or changed since the preceding assessment. See 35 ILCS 200/12—10 (West 2000). For each property listed, the publication "shall include [among other things] *** the total amount of its assessment and how much of the assessment is attributable to the improvements on the property." 35 ILCS 200/12—25 (West 2000). Objectors argue that the publication of the assessments in this case failed to include the amounts attributable to improvements, thereby vitiating the tax.

In general, the statutory publication requirements of the Code are mandatory, not directory, and require strict compliance. See *Andrews v. Foxworthy*, 71 Ill. 2d 13, 19-23 (1978); *People ex rel. Republican-Reporter Corp. v. Holmes*, 98 Ill. App. 2d 11 (1968). However, section 21—185 of the Code provides in relevant part:

> "No error or informality in the proceedings of any of the officers connected with the assessment, levying or collection of the taxes, not affecting the substantial justice of the tax itself, shall vitiate or

in any manner affect the tax or the assessment thereof." 35 ILCS 200/21—185 (West 2000).

We do not see how the failure to list separately the amount of the assessment that is attributable to the improvements on the property prejudiced objectors or affected the substantial justice of the tax levy. Objectors do not tell us how they were injured by this failure or how the failure affected the justice of the levy; they merely argue the mandatory nature of the publication requirements. See *People ex rel. Martin v. Commonwealth Edison Co.*, 286 Ill. App. 3d 189, 193 (1997) (an objection to a tax levy should disclose the injury caused by the levying process). In addition, objectors' only citation to the record in this argument is to the request to admit facts, with which we have already dealt. While we do not condone or encourage such an omission, we do not conclude that an otherwise timely publication of tax information is insufficient and requires the vitiation of the tax. There is a strong legislative preference in favor of upholding tax levies that are otherwise legal but for a parliamentary or procedural error. *Martin*, 286 Ill. App. 3d at 193. Therefore, we find no prejudicial error here.

█ Objectors next contend that Jo Daviess County violated numerous statutes by failing to maintain a detailed property record system, a proper permanent index numbering system, tax maps, indices of legal descriptions, lists of new or added improvements, or recorded surveys or plats depicting the subject property. We disagree.

Donna Berlage, deputy supervisor of assessments, testified that Jo Daviess County had a permanent index numbering system for parcels of land and tax maps for part, but not all, of the county. Information on parcels of land was kept on individual property record cards. Nancy Miller testified that the county had a property index numbering system, in place since at least 1950, and maintained property record cards on each parcel. The county had also prepared and maintained tax maps for part, but not all, of the county. All of the subject parcels were mapped as of the day of trial. The county had been working on tax maps since 1986, but the mapping department was not set up until 1999 and is "in the process of maintaining tax maps." The Illinois Property Appraisal Manual is a guideline used in the preparation of tax maps, but it does not carry the force of law. Also, the Illinois Property Appraisal Manual is out of date, as it was published in 1976, when tax maps were "hard copy maps." Consequently, the county used a geographical information system that mapped parcels on a computer. By using the computer, someone could also research a permanent index number to obtain a legal description of the parcel.

The trial court found that the alleged errors did not affect the substantial justice of the tax. In light of the testimony of Berlage and

Miller, that finding was not against the manifest weight of the evidence. Therefore, we find no error here.

■ Objectors next contend that they were denied equal protection and due process of law by the property tax assessment process. Objectors first argue that the "great and dominant idea of the constitution is uniformity of taxation," such that property should be assessed uniformly with other property in the same class within the county.

Objectors presented evidence of open-space assessments for property used for golf courses in Jo Daviess County. While objectors' property was assessed at $4,000 per acre, all other open-space parcels at four other golf courses were assessed at between $1,500 and $2,500 per acre. According to objectors, such dissimilar valuations for similarly classified parcels demonstrates a lack of uniformity and a denial of due process. We disagree.

The uniformity clause of the Illinois Constitution requires that "taxes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law." Ill. Const. 1970, art. IX, § 4(a). This requires equality in the burden of taxation, which, in turn, requires equality of taxation in proportion to the value of the property taxed. *Walsh v. Property Tax Appeal Board*, 181 Ill. 2d 228, 234 (1998). Thus, taxing officials may not value the same type of properties, within the same taxing boundary, at different proportions of their true values. *Walsh*, 181 Ill. 2d at 234.

Section 10—155 of the Code provides in relevant part that land that is properly classified as open space for property tax purposes:

> "[S]hall be valued on the basis of its fair cash value, estimated at the price it would bring at a fair, voluntary sale for use by the buyer for open space purposes." 35 ILCS 200/10—155 (West 2000).

Use of land as a golf course is but one use that qualifies as an open-space purpose. See 35 ILCS 200/10—155(a) through (f) (West 2000). In *Lake County Board of Review v. Property Tax Appeal Board*, 192 Ill. App. 3d 605 (1989), this court held that the predecessor statute to section 10—155 (section 20g—1 of the Revenue Act of 1939 (Ill. Rev. Stat. 1987, ch. 120, par. 501g—1), which is the same in all relevant aspects) "clearly expresses the legislative intent to afford a uniform valuation to all land actually used for one or more of the open-space purposes enumerated therein regardless of whatever other actual use or improvements the land supports." *Lake County Board of Review*, 192 Ill. App. 3d at 618. Thus, this court held that "there are no 'least' or 'most' valuable" open-space lands, and the Property Tax Appeal Board (PTAB) did not err in determining the value of golf courses based on evidence of the value of wetlands and marshes that also qualified as open-space lands. *Lake County Board of Review*, 192 Ill. App. 3d at 619.

Objectors argue that this requires all the open-space properties to be valued at the same per-acre value. However, section 10—155 does not require such an outcome. There is no evidence that a fair, voluntary sale of the various golf course properties in Jo Daviess County would result in the same fair cash value for each property. The sizes of the properties and their locations, among other things, could affect the prices that these properties would bring at a sale, even if they were to remain as open-space properties. *Lake County Board of Review*, upon which objectors rely, is distinguishable in that the question therein involved whether the PTAB could determine the value of open-space properties without regard to the actual current use of the property (*i.e.*, golf course versus wetlands). The court in that case was not asked to consider whether other aspects of such properties (*i.e.*, size and location within the county) could affect the value of open-space properties. We answer this question in the affirmative, and we conclude that there was insufficient evidence to clearly and convincingly establish a violation of equal protection in the valuation of objectors' property.

*Lake County Board of Review* is further distinguishable on its facts. In that case, six golf courses applied to the Lake County supervisor of assessments for open-space valuation. The supervisor of assessments concluded that the open-space fair cash value of the golf courses was $6,000 per acre, resulting in an assessed valuation of $2,000 per acre. The Lake County Board of Review (LBOR) affirmed this valuation, and the golf courses filed appeals with the PTAB, which reversed the LBOR and found the assessed value of the golf courses' open space to be $500 per acre. On administrative review, the trial court found that the PTAB's decision was not against the manifest weight of the evidence and that the PTAB had correctly interpreted section 20g—1 as mandating a uniform valuation of open space, regardless of the actual use. *Lake County Board of Review*, 192 Ill. App. 3d at 607-08. This court affirmed.

In the case before us, objectors appealed directly from the Jo Daviess County Board of Review (JBOR) to the trial court, bypassing the PTAB. Objectors then had the burden of proving by clear and convincing evidence that the JBOR's valuation was incorrect. See *Walsh*, 181 Ill. 2d at 234. Unlike in *Lake County Board of Review*, where a level of assessed valuation had been decided by the PTAB and all taxpayers sought that valuation, objectors herein merely argue that their property was valued too highly without establishing what the supposed uniform level of assessed valuation is. Objectors presented the testimony of real estate appraiser Michael Doyle, who testified that the value of open space in Jo Daviess County was $1,650 per acre.

However, Doyle admitted that he had never appraised open-space land before. In addition, Doyle admitted that he did not consider several potential open-space properties that sold for considerably higher amounts, including land that was sold for use as a golf course. He further admitted that he originally considered several properties that did not qualify or were from a different county. Such evidence is not clear and convincing. Whereas the taxpayers in *Lake County Board of Review* sought to have their property assessed at a prior-determined open-space value, objectors here failed to present clear and convincing evidence of what such an open-space value is, and we would not presume to know what that value is. We cannot tell if objectors' property is overvalued or the other golf course properties are undervalued. Without such clear and convincing evidence, we can find no error here.

Objectors next argue that their rights to due process were violated because of the pecuniary interests of the supervisor of assessments. Property is to be valued at $33^{1}/_{3}\%$ of its fair cash value. 35 ILCS 200/9—145(a) (West 2000). Section 4—20 of the Code provides that assessors may petition the Illinois Department of Revenue to receive additional compensation based on performance; to receive this compensation, the median level of assessment in the official's assessment jurisdiction must be between $31^{1}/_{3}\%$ and $35^{1}/_{3}\%$ of the fair cash value of property in the jurisdiction and meet other statistical criteria. 35 ILCS 200/4—20 (West 2000). Nancy Miller, Jo Daviess County supervisor of assessments, testified that, while her paycheck came from the county, 50% of her salary came from the county and 50% came from the state. The statutory level of assessments is $33^{1}/_{3}\%$ of fair cash value; if the sales ratio statistics for the county did not fall within the range of $31^{1}/_{3}\%$ and $35^{1}/_{3}\%$, the county would not be reimbursed by the state for half of her salary. She did not know if the county would not reimburse her in such an event because she "never had that problem."

We find no violation of due process rights here. Miller had no pecuniary interest in the proceedings. There was no evidence that she would personally suffer financially if she did not meet the goals of section 4—20. In addition, she is required by statute to assess the property in Jo Daviess County at $33^{1}/_{3}\%$ of the fair cash value. The state's reimbursement to the county in the event that Miller does her statutory duty as supervisor of assessments does not create a conflict of interest or a bias on her part. Objectors' argument would lead to the invalidity of every assessment in a county receiving such statutory compensation because the assessor performed his statutory duty. This is absurd, and we find no error here.

Objectors also argue that the county's property record system and numbering system violate their due process rights. However, we have already concluded that the county was in substantial compliance with requirements for numbering, mapping, and recording property. Objectors point out alleged discrepancies in several property record cards for parcels of property unrelated to the parcels at issue in this case. Even if these other property cards were erroneous, we do not conclude that they would affect objectors' right to be heard, nor would they affect the substantial justice of the assessment of objectors' property or the tax itself. See 35 ILCS 200/21—185 (West 2000). Therefore, we find no error here.

Objectors next contend that the trial court erred in the weight it assigned to the testimony of objectors' appraiser. Objectors make only a single general cite to 50 pages of the appraiser's testimony and tell us only that the appraiser opined that the fair market value of open space in Jo Daviess County was $1,650 per acre. Their argument is nothing more than a repetition of their earlier argument that *Lake County Board of Review* requires that all open-space property must have the same assessed value, without establishing what that value is. We are still unpersuaded, and we find no error here.

For these reasons, the judgment of the circuit court of Jo Daviess County is affirmed.

Affirmed.

HUTCHINSON and GROMETER, JJ., concur.