NO. 4-05-0053          **Filed: 1/26/06**

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

CONSUMERS IL WATER COMPANY,          ) Direct Administrative
      Petitioner-Appellant,          ) Review of the
      v.          ) Illinois Property Tax
THE VERMILION COUNTY BOARD OF REVIEW ) Appeal Board
and THE ILLINOIS PROPERTY TAX APPEAL ) No. 02-00059.001-C-3
BOARD,          )
      Respondents-Appellees.          )

_____

      PRESIDING JUSTICE TURNER delivered the opinion of the court:

      Petitioner, Consumers IL Water Company, owns a 117.23-acre tract of land in Vermilion County that contains a water-retention dam and lake. In December 2001, petitioner filed an application for an open-space valuation for the 2002 tax year under section 10-155 of the Property Tax Code (Code) (35 ILCS 200/10-155 (West 2002)) for the entire 117.23 acres with the Vermilion County Supervisor of Assessments' office. That office denied the application, and petitioner filed an assessment complaint with respondent, the Vermilion County Board of Review (Board of Review). In December 2002, the Board of Review denied petitioner's request for the open-space valuation, and petitioner filed a complaint with respondent, the Property Tax Appeal Board (PTAB). After an August 2004 hearing, PTAB found the land qualified for an open-space valuation but not the dam.

      Pursuant to Supreme Court Rule 335 (155 Ill. 2d R. 335)

and section 16-195 of the Code (35 ILCS 200/16-195 (West 2002)), petitioner seeks direct review of PTAB's decision, contending the dam should not be assessed separately. We reverse and remand with directions.

## I. BACKGROUND

The evidence submitted at the August 2004 hearing shows the Vermilion County Supervisor of Assessments' office gave the 117.23 acres an assessed value of $58,953 and the improvements on the land $1,437,411. In reviewing petitioner's assessment complaint, the Board of Review did not make any changes to the above assessed values. The photographs submitted by petitioner and the parties' witnesses' testimony indicate the 117.23-acre property contains a lake created by a large, man-made dam. A fence surrounds the dam, and buoys are in the water with warnings to stay away from the dam. Petitioner leases the lake to the Vermilion County Conservation District for public purposes. The public uses the lake for recreational purposes such as boating and fishing.

Michael Lipowsky, a local real estate appraiser, testified for petitioner. He described the physical characteristics of the property and was the one who took the photographs of the land submitted by petitioner. Lipowsky stated the land was not used for residential purposes.

Don Crist, Vermilion County Supervisor of Assessments,

testified on behalf of the Board of Review. He testified the primary purpose of the lake was to provide a water supply for petitioner to make a profit. Crist further noted golf courses were the only type of property in Vermilion County that received an open-space valuation. In the case of golf courses, the land got the open-space valuation but not the clubhouse. The open-space valuation for golf courses in Vermilion County was around $400 to $500.

In its December 2004 decision, PTAB awarded petitioner an open-space valuation for the entire 117.23 acres of land only and thus reduced the Board of Review's assessed value for the land from $58,953 to $19,536. Specifically, PTAB found (1) the land had to satisfy only one of subsections (a) through (f) of section 10-155 (35 ILCS 200/10-155(a) through (f) (West 2002)) and (2) the 117.23 acres met subsection (c) (35 ILCS 200/10-155(c) (West 2002)) and all of the other requirements of section 10-155. However, PTAB disagreed with petitioner's argument that once the land qualifies for an open-space valuation, the additional ground improvements cannot be taxed separately. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

The Administrative Review Law (735 ILCS 5/3-101 through 3-113 (West 2002)) governs our review of PTAB's decision. 35

ILCS 200/16-195 (West 2002). Our review extends to all questions of law and fact presented in the record. 735 ILCS 5/3-110 (West 2002). With questions of law, the agency's decision is not binding on this court, and thus our review is de novo. Illini Country Club v. Property Tax Appeal Board, 263 Ill. App. 3d 410, 416, 635 N.E.2d 1347, 1353 (1994), overruled on other grounds by Peacock v. Property Tax Appeal Board, 339 Ill. App. 3d 1060, 1071, 792 N.E.2d 367, 376 (2003). As to questions of fact, we will not reverse them unless they are against the manifest weight of the evidence. Illini Country Club, 263 Ill. App. 3d at 417, 635 N.E.2d at 1353. A finding is against the manifest weight of the evidence if the opposite conclusion is clearly evident. Peacock, 339 Ill. App. 3d at 1068, 792 N.E.2d at 373.

If a case presents a mixed question of law and fact, we review the agency's ruling under a clearly erroneous standard. Lake Point Tower Garage Ass'n v. Property Tax Appeal Board, 346 Ill. App. 3d 389, 392, 804 N.E.2d 717, 720 (2004). Under that standard, a reviewing court will not reverse the agency's decision unless the court has a definite and firm conviction the agency was mistaken. Lake Point Tower Garage Ass'n, 346 Ill. App. 3d at 392-93, 804 N.E.2d at 720.

Here, the parties disagree as to the appropriate standard of review. Our resolution of the case requires us only to address questions of law, and thus our review is de novo

- 4 -

(Illini Country Club, 263 Ill. App. 3d at 416, 635 N.E.2d at 1353).

## B. Open-Space Valuation

Ordinarily, property is valued based on its fair cash value (also referred to as fair market value), "meaning the amount the property would bring at a voluntary sale where the owner is ready, willing, and able to sell; the buyer is ready, willing, and able to buy; and neither is under a compulsion to do so." Illini Country Club, 263 Ill. App. 3d at 418, 635 N.E.2d at 1353; see also 35 ILCS 200/9-145(a) (West 2002). An exception to that rule is section 10-155 of the Code (35 ILCS 200/10-155 (West 2002)), which provides an alternative valuation if certain criteria are met. Additionally, county assessment officials generally value property and its improvements separately since they must list the assessed value of the property in one column, the assessed value of improvements in another, and the total valuation in a separate column. See 35 ILCS 200/9-155 (West 2002).

At issue in this case is whether a dam, an improvement, located on property that qualifies for an alternative valuation under section 10-155 of the Code (35 ILCS 200/10-155 (West 2002)) can be separately assessed. Petitioner contends that property satisfying the section 10-155 criteria can receive only a single assessment. Conversely, PTAB and the Board of Review contend the

dam can be separately assessed because section 10-155 applies only to the land itself, not improvements.  Thus, we first address whether section 10-155 of the Code applies only to the land itself.

Section 10-155 of the Code provides as follows:

"In all counties, in addition to valuation as otherwise permitted by law, land which is used for open[-]space purposes and has been so used for the 3 years immediately preceding the year in which the assessment is made, upon application under [s]ection 10-160, shall be valued on the basis of its fair cash value, estimated at the price it would bring at a fair, voluntary sale for use by the buyer for open[-]space purposes.

Land is considered used for open[-]space purposes if it is more than 10 acres in area and:

(a) is actually and exclusively used for maintaining or enhancing natural or scenic resources,

(b) protects air or streams or water supplies,

(c) promotes conservation of soil, wetlands, beaches, or marshes, including ground cover or planted perennial grasses, trees and shrubs and other natural perennial growth, and including any body of water, whether man-made or natural,

(d) conserves landscaped areas, such as public or private golf courses,

(e) enhances the value to the public of abutting or neighboring parks, forests, wildlife preserves, nature reservations, sanctuaries, or other open spaces, or

(f) preserves historic sites.

Land is not considered used for open [-]space purposes if it is used primarily for residential purposes." 35 ILCS 200/10-155 (West 2002).

Section 10-160 (35 ILCS 200/10-160 (West 2002)) sets forth the application process for obtaining the section 10-155 valuation, and section 10-165 (35 ILCS 200/10-165 (West 2002)) describes what takes place when the land is no longer used for open-space purposes.

In interpreting statutes, courts seek to ascertain and give effect to the legislature's intent. They begin by examining the statute's language. The words are given their plain and commonly understood meanings as viewed, not in isolation, but in light of the statute's other relevant provisions. When a statute's language is clear and unambiguous, it will be given effect without resort to statutory-construction tools. State Board of Elections v. Shelden, 354 Ill. App. 3d 506, 512, 821 N.E.2d 698, 704 (2004).

In this case, some of the parties have cited legislative history. However, that statutory-construction tool is not necessary since section 10-155 is not ambiguous. Illini Country Club, 263 Ill. App. 3d at 418, 635 N.E.2d at 1354.

Sections 10-155 through 10-165 of the Code consistently use the term "land." 35 ILCS 200/10-155 through 10-165 (West 2002). Section 1-130 of the Code defines the term "land" (as well as property, real property, real estate, tract, and lot), in pertinent part, as follows:

> "The land itself, with all things con-
> tained therein, and also all buildings,
> structures and improvements, and other perma-

nent fixtures thereon, including all oil,

gas, coal[,] and other minerals in the land

and the right to remove oil, gas[,] and other

minerals, excluding coal, from the land, and

all rights and privileges belonging or per-

taining thereto, except where otherwise spec-

ified by this Code."  35 ILCS 200/1-130 (West

2002).

The open-space valuation provisions do not set forth a different definition of "land" or indicate improvements should be treated differently.  Conversely, the provisions addressing farmland valuation (35 ILCS 200/10-110 through 10-147 (West 2002)) expressly set forth different valuation formulas for "farmland," "farm dwellings," and "other improvements."  Accordingly, we find that when sections 10-155 through 10-165 of the Code state "land," they refer to the land itself and improvements.

Since "land" includes the ground and improvements, both the ground and the improvements must meet the requirements of section 10-155 of the Code.  If any portion of the land included in a section 10-160 application is not used for open-space purposes, then all of the land is not entitled to the valuation.  See 35 ILCS 200/10-165 (West 2002).  In this case, PTAB expressly found both the lake and the dam met the section 10-155 requirements.

We next must address whether the dam and land are to be

assessed separately or as a single assessment.  We agree with petitioner that section 10-155 of the Code (35 ILCS 200/10-155 (West 2002)) provides a single assessment value, and thus improvements do not have their own assessment value.

As stated earlier, the statute expressly requires the land and its improvements to be for open-space purposes.  Therefore, the improvements and land together are fulfilling a purpose the legislature found valuable.  "Open space" is defined as follows:

> "'Any parcel or area of land or water
> essentially unimproved and set aside, dedi-
> cated, designated[,] or reserved for public
> or private use or enjoyment or for the use
> and enjoyment of owners and occupants of land
> adjoining or neighboring such open spaces.'"
> (Emphasis added.)  Illini Country Club, 263
> Ill. App. 3d at 419, 635 N.E.2d at 1355,
> quoting Black's Law Dictionary 984 (5th ed.
> 1979).

Thus, while the land has improvements, those improvements are contributing to the open-space nature of the land.

Our interpretation of section 10-155 of the Code is consistent with the Third District's interpretation in Knox County Board of Review v. Illinois Property Tax Appeal Board, 185 Ill. App. 3d 530, 541 N.E.2d 794 (1989).  There, the court concluded the Code contemplated a single assessment for open-

space land.  Knox County, 185 Ill. App. 3d at 535, 541 N.E.2d at 797.

The Board of Review suggests the Third District's conclusion was inconsistent since it also sustained the improvement assessments for a house and building.  However, the facts indicate the petitioner applied for an open-space valuation for the 76.5-acre golf course, not the other acre of the tract that contained the house and building.  Knox County, 185 Ill. App. 3d at 532, 541 N.E.2d at 795.  Thus, the open-space land did receive only one assessment.

The Board of Review further asserts Knox County's holding should be limited to golf courses because tees, fairways, and greens are inseparable components of the golf course.  Yet, in this case, the man-made lake would not exist but for the dam.  Accordingly, the Board of Review's distinction is meritless.

PTAB also asserts Knox County's holding should be limited to golf courses because golf courses are "land that has been configured in specialized ways."  However, we have already concluded the statute refers to "land" as the land itself and its improvements.  Thus, this distinction is also meritless.

Additionally, we note that where a statute has been judicially interpreted, considerations of stare decisis weigh heavily since the legislature is free to change its legislation in response to such interpretations.  Lake County Board of Review v. Property Tax Appeal Board, 192 Ill. App. 3d 605, 617, 548 N.E.2d 1129, 1137 (1989).  With section 10-155 of the Code, the

legislature has made only one major change in the criteria for receiving an open-space valuation since the <u>Knox County</u> decision. Compare 35 ILCS 200/10-155 (West 2002) with Ill. Rev. Stat. 1987, ch. 120, par. 501g-1.  In that amendment, it removed the requirement that the county in which the land was located have a population of less than 200,000.  See Pub. Act 89-137, §5, eff. January 1, 1996 (1995 Ill. Laws 2120).

Last, we recognize the paradox our interpretation yields.  While it is hard to conceive of land improved with a large structure as being assessed like unimproved land, the language of the Code provides for such a result.

III. CONCLUSION

For the reasons stated, we reverse PTAB's judgment and remand the cause to PTAB to remove the improvement assessment for the dam.

Reversed and remanded with directions.

STEIGMANN and KNECHT, JJ., concur.