# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Onwentsia Club v. Illinois Property Tax Appeal Board*, 2011 IL App (2d) 100388

| | |
|---|---|
| Appellate Court Caption | ONWENTSIA CLUB, Petitioner, v. ILLINOIS PROPERTY TAX APPEAL BOARD and LAKE COUNTY BOARD OF REVIEW, Respondents. |
| District & No. | Second District<br>Docket No. 2–10–0388 |
| Filed | June 16, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court vacated the decision of the board of review denying an open space classification to the improved portions of petitioner's private golf course, including a swimming pool, a clubhouse, a horse riding area, a stable, a parking lot, a driveway and tennis courts, since improvements did not necessarily preclude open space classification pursuant to section 10–155 of the Property Tax Code; therefore, the cause was remanded for a determination of whether those improvements conserved landscaped areas by facilitating the existence of the golf course. |
| Decision Under Review | Petition for review of order of Property Tax Appeal Board, Nos. 06–00614.0001–C–3 and 06–00614.0004–C–3. |
| Judgment | Vacated and remanded with directions. |

Counsel on
Appeal

David T.B. Audley, of Chapman & Cutler, LLP, of Chicago, for petitioner.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for respondent Property Tax Appeal Board.

Michael J. Waller, State's Attorney, of Waukegan (Tara H. Ori, Assistant State's Attorney, of counsel), for respondent Lake County Board of Review.

Panel

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Presiding Justice Jorgensen and Justice Hutchinson concurred in the judgment and opinion.

## OPINION

¶ 1      Petitioner, Onwentsia Club, appeals a decision of the Property Tax Appeal Board (PTAB) that affirmed (in pertinent part) a decision of the Lake County board of review, both bodies being named as respondents in the instant action. The board of review denied open-space status to certain portions of land owned by petitioner. Having one's property classified as open space is favorable to a land owner in terms of taxation. See 35 ILCS 200/10–155 (West 2006). The PTAB agreed with the board of review. We, however, do not. Accordingly, we vacate and remand with directions.

¶ 2                          BACKGROUND

¶ 3      The facts in this case are largely undisputed. Petitioner is a private golf club located in Lake Forest. The club occupies about 180 acres of land, which is divided into 10 tax parcels. Most of the land consists of an 18-hole golf course. However, other portions of the land are occupied by a swimming pool, clubhouse, horse riding area, stable, parking lot, driveway, and tennis courts. These improvements cover 8.72 acres.

¶ 4      Prior to 2006, the Lake County assessor's office granted open-space status to all property owned by a golf course. For other owners of land, only those portions of their property that were actually used for open-space purposes were granted open-space status. In 2006, the county began treating golf courses in the same manner that it treated other owners of land. Accordingly, it assessed improved portions of golf courses based on their fair-market value as a residential use. In 2006, open space was assessed at a rate of $1,000 per acre. Changing the designation of the improved portions of petitioner's land to residential resulted in

substantial increases in their assessed value. For example, a 3.85-acre tax parcel that would have been assessed at $3,850 had it been granted open-space status for its improved portions was now assessed at $861,594.

¶ 5 Central to this appeal is the following statute:

"Open space land; valuation. In all counties, in addition to valuation as otherwise permitted by law, land which is used for open space purposes and has been so used for the 3 years immediately preceding the year in which the assessment is made, upon application under Section 10–160, shall be valued on the basis of its fair cash value, estimated at the price it would bring at a fair, voluntary sale for use by the buyer for open space purposes.

Land is considered used for open space purposes if it is more than 10 acres in area and:

(a) is actually and exclusively used for maintaining or enhancing natural or scenic resources,

(b) protects air or streams or water supplies,

(c) promotes conservation of soil, wetlands, beaches, or marshes, including ground cover or planted perennial grasses, trees and shrubs and other natural perennial growth, and including any body of water, whether man-made or natural,

(d) conserves landscaped areas, such as public or private golf courses,

(e) enhances the value to the public of abutting or neighboring parks, forests, wildlife preserves, nature reservations, sanctuaries, or other open spaces, or

(f) preserves historic sites.

Land is not considered used for open space purposes if it is used primarily for residential purposes." 35 ILCS 200/10–155 (West 2006).

Of particular significance is subsection (d), which specifically mentions golf courses.

¶ 6 Petitioner brought the matter to the board of review, which, by its findings, implicitly rejected petitioner's arguments that all of its property was entitled to open-space status. Petitioner then appealed to the PTAB. The PTAB affirmed the decision of the board of review. It framed the issue as "whether or not the land that underlies certain structural improvements at the golf course such as the tennis courts, the swimming pool, the clubhouse, parking lot and the like, are to receive the open space valuation and assessment, or are to be valued based on the land's fair cash value as otherwise provided in the Property Tax Code." The PTAB noted that land is deemed open space where it is "more than 10 acres in area" and it "conserves landscaped areas." 35 ILCS 200/10–155 (West 2006). The PTAB then held that "only those portions of the subject [parcels] actually used to conserve landscaped area satisfy the definition of open space land within the statute." It found that, notwithstanding the fact that certain improvements are "used in association with the commercial/business purpose of Onwentsia Club," they "are not used to conserve landscaped areas." Accordingly, the PTAB determined that it was appropriate to exclude such areas from the balance of the golf course, which would retain open-space status. Petitioner now appeals the PTAB's decision to this court.

¶ 7                                    ANALYSIS

¶ 8         The sole issue in this appeal is whether petitioner's property was properly denied open-
space status where certain improvements existed. Assessing the character of petitioner's
property and determining whether it falls within the statutory definition of open space
presents a mixed question of law and fact, as it involves "an examination of the legal effect
of a given set of facts." *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d
191, 205 (1998). To such questions we apply the deferential "clearly erroneous" standard of
review. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380,
391 (2001). However, before reaching this question, it is necessary for us to construe section
10–155 of the Property Tax Code (Code). To the extent a statute is ambiguous, we give
substantial deference to an agency charged with administering it. *Board of Education of
Auburn Community Unit School District No. 10 v. Department of Revenue*, 398 Ill. App. 3d
629, 637 (2010). However, if the statute is not ambiguous, we are not bound by the agency's
decision and our review is *de novo*. *Burzic v. Illinois Workers' Compensation Comm'n*, 391
Ill. App. 3d 202, 208-09 (2009).

¶ 9         Before turning to the particular facts of this case, we will examine section 10–155 in
detail. In ascertaining the meaning of a statue, a court must first look to its plain language,
as that is usually the best indication of the legislature's intent. *First American Bank Corp.
v. Henry*, 239 Ill. 2d 511, 515 (2011). Our primary goal is, of course, to give effect to the
intent of the legislature. *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546,
552 (2009). Where a statute is unambiguous, we must apply it as written. *DeLuna v.
Burciaga*, 223 Ill. 2d 49, 59 (2006). A statute must be read as a whole, giving effect to all of
its parts. *First American Bank Corp.*, 239 Ill. 2d at 516. A court must not frustrate the
expressed intent of the legislature by reading into a statute any conditions, limitations, or
exceptions that conflict with the statute's plain language. *People v. Adair*, 406 Ill. App. 3d
133, 144 (2010). Further, "[l]egislative intent can be ascertained from consideration of the
entire statute, its nature and objective, and the consequences that would result from
construing it one way or the other." *In re Marriage of Anderson*, 405 Ill. App. 3d 1129, 1134-
35 (2010).

¶ 10        We begin with the plain language of the statute. Pertinent here, the statute states, "Land
is considered used for open space purposes if it is more than 10 acres in area and *** 
*conserves* landscaped areas, such as public or private golf courses ***." (Emphasis added.)
35 ILCS 200/10–155(d) (West 2006). Notably, the statute does not state–which it easily
could have–that land is considered open space if it *is* a landscaped area. "Conserve" means
"to keep in a safe or sound state (as by deliberate, planned, or intelligent care)" or "to
preserve." Webster's Third New International Dictionary 483 (2002). Thus, the plain
language of the statute indicates that the legislature intended to grant open-space status not
only to land that actually constitutes a landscaped area, but also to land that facilitates the
existence of (*i.e.*, conserves) a landscaped area. Quite simply, land that *conserves* a
landscaped area has a broader meaning than land that *is* a landscaped area.

¶ 11        Next, considering the statute as a whole, as is proper (*First American Bank Corp.*, 239

Ill. 2d at 516), we conclude that the fact that a particular piece of land has some improvement upon it–including in some cases a building–does not preclude the land from being deemed open space. This proposition becomes clear when one considers the statute's two exceptions to a piece of land receiving open-space status. The first such exception is that "[l]and is not considered used for open space purposes if it is used primarily for residential purposes." 35 ILCS 200/10–155 (West 2006). Obviously, for land to be used for residential purposes, it would have to contain a building. Thus, the mere existence of a building does not, in and of itself, cause land to be ineligible for open-space status. Only if the building is used as a residence does it act as such a bar. Indeed, if any building prevented land from attaining open-space status, this exception would be meaningless, as the question of whether the land was used for residential purposes would be mooted by the existence of the building. This, in turn, would run afoul of the well-established principle of statutory construction that requires a statute to be interpreted such that none of its parts are rendered mere surplusage. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440-41 (2010).

¶ 12        That the existence of a structure does not necessarily prevent land from being classed as open space is confirmed by the second exception, which was added to the statute in 2008. That exception is set forth as follows:

> "If the land is improved with a water-retention dam that is operated primarily for commercial purposes, the water-retention dam is not considered to be used for open space purposes despite the fact that any resulting man-made lake may be considered to be used for open space purposes under this Section." 35 ILCS 200/10–155 (West 2008).

The plain language of the statute indicates that only *commercial* water-retention dams are not eligible for open-space status. Land with a noncommercial dam can be deemed open space. Further, by including the phrase "improved with a water-retention dam," the legislature specifically recognized that a water-retention dam is an improvement. See 35 ILCS 200/10–155 (West 2008); see also *Consumers IL Water Co. v. Vermillion County Board of Review*, 363 Ill. App. 3d 646, 651-53 (2006) (holding that, prior to amendment containing exception set forth in this paragraph, land containing a dam was open space).

¶ 13        We also note that section 1–130 of the Code jointly defines "Property; real property; real estate; land; tract; [and] lot" as:

> "The land itself, with all things contained therein, and *also all buildings, structures and improvements*, and other permanent fixtures thereon, including all oil, gas, coal, and other minerals in the land and the right to remove oil, gas and other minerals, excluding coal, from the land, and all rights and privileges belonging or pertaining thereto, except where otherwise specified by this Code." (Emphasis added.) 35 ILCS 200/1–130 (West 2006).

Thus, "land" includes "buildings, structures and improvements." There is no indication that the term land as used in section 10–155 was intended to mean something different from what the legislature set forth in section 1–130. Indeed, pursuant to section 1–3, such definitions apply throughout the Code. 35 ILCS 200/1–3 (West 2006).

¶ 14        From the two exceptions in section 10–155 and the definition in section 1–130, we discern that an improvement does not defeat open-space status unless the improvement is a

commercial water-retention dam or a residential use. Of course, the land still has to meet the other conditions set forth in section 10–155. In this case, the land must be at least 10 acres (which is not in dispute) and it must conserve landscaped areas. 35 ILCS 200/10–155(d) (West 2006). As noted above, the requirement that land *conserve* a landscaped area is broader and more inclusive than actually *being* a landscaped area.

¶ 15 We next note that golf courses are specifically recognized in section 10–155(d) as an example of the type of land that conserves landscaped areas. 35 ILCS 200/10–155(d) (West 2006). A common definition of "golf course" is "an area of land laid out for the game of golf with a series of 9 or 18 holes each including tee, fairway, and green and often one or more natural or artificial hazards." Webster's Third New International Dictionary 976 (2002). However, we reiterate that excluding other improvements simply because they are improvements would conflict with the plain language of the statute, as explained above. Moreover, golf courses are merely listed as an example of something that conserves landscaped areas. That something is not a golf course in the strict sense is no reason to deny it open-space status, so long as it otherwise meets the statutory requirements. *Golf Trust of America, L.P. v. Soat*, 355 Ill. App. 3d 333, 339 (2005) ("Use of land as a golf course is but one use that qualifies as an open-space purpose."). After all, the legislature's goal in enacting section 10–155 was not to protect golf courses, but to protect open space.

¶ 16 Thus, we hold that land, even if it contains an improvement, may be granted open-space status if it conserves landscaped areas. A golf course typically requires certain appurtenances in order to function, such as parking areas, a building in which to conduct the course business (*i.e.*, a clubhouse), and perhaps a building to support the physical maintenance of the course. Without such improvements, many courses would not exist. Since they facilitate the existence of the golf course, and the course conserves landscaped areas, such improvements also can be said to conserve landscaped areas. See *Consumers IL Water Co.*, 363 Ill. App. 3d at 652. In other words, they "keep [the course] in a safe or sound state (as by deliberate, planned, or intelligent care)." Webster's Third New International Dictionary 483 (2002). As such, they do not prevent the land upon which they exist from attaining open-space status.

¶ 17 We next consider the decision of the PTAB, which sought to determine "whether or not the land that underlies certain structural improvements at the golf course such as the tennis courts, the swimming pool, the clubhouse, parking lot and the like, are to receive the open space valuation and assessment." It held that such land was not open space within the meaning of section 10–155. It explained that "only those portions of the subject [parcels] actually used to conserve landscaped area satisfy the definition of open space land within the statute." The main problem we note with the PTAB's decision is that it never comes to terms with the meaning of "conserve." Apparently, it concluded that, for land to conserve a landscaped area, the landscaped area must actually be physically on the land. As noted above, if the legislature intended such a meaning, it would have simply stated that only a landscaped area is open space. *Cf. Lake County Board of Review v. Property Tax Appeal Board*, 192 Ill. App. 3d 605, 618 (1989) ("That these other uses may or may not also incidentally support some other economic use of the land is of no moment since its use for open-space purposes supercedes any such other use when its value under section 20g–1 [(the prior version of section 10–155)] is at issue."). Further, such an interpretation is not consistent with the

exceptions set forth in section 10–155.

¶ 18 Having set forth this bright-line distinction between landscaped areas and the various improvements on petitioner's property, the PTAB found no need to analyze the nature of the particular improvements. As we explained above, improved areas might be entitled to open-space status if they conserve a landscaped area. In *Consumers IL Water Co.*, 363 Ill. App. 3d at 652, the court held, "Thus, while the land has improvements, those improvements are contributing to the open-space nature of the land." This principle guides the inquiry here. If an improvement contributes to the nature of the land as a landscaped area, it fits within the statutory definition of open space. To the extent improved land facilitates a golf course being a golf course, it conserves a landscaped area. Accordingly, the PTAB applied the wrong standard in relying on a bright-line distinction focusing on improvements destroying the open-space nature of the land. Rather, it should have considered whether the land, improved or not (so long as it is not improved with a residence or commercial water-retention dam), conserves a landscaped area (that is, facilitates the existence of such an area). As it applied an incorrect standard, we vacate its decision.

¶ 19 We will not inquire into the particular improvements on petitioner's property. That requires a fact-intensive inquiry that would be better performed by the PTAB. To the extent the PTAB determines that an improvement in this case conserves a landscaped area by facilitating the existence of the golf course, it should grant open-space status to that portion of petitioner's property. Other improved land should be denied open-space status, unless, of course, it otherwise conserves a landscaped area or falls elsewhere within the ambit of section 10–155. We note that the PTAB attempted to distinguish *Consumers IL Water Co.*, 363 Ill. App. 3d at 651-52, on the basis that the improvement at issue in that case was a dam that created a man-made lake, which would not have existed but for the dam. Thus, the PTAB explained, the dam was "contributing to the open-space nature of the land." It then determined that "the land underlying the various building improvements such as clubhouses, the parking lot, tennis courts, swimming pool, dorm, wigwam, tennis house, platform tennis, an old riding area and old stables, is not open space." It explained that these areas are "ancillary to the golf course itself and do not contribute to the open space nature of the land." We fail to perceive a distinction between a dam facilitating a lake and structures like clubhouses and parking lots facilitating the existence of a golf course (which is specifically listed in the statute as something that conserves landscaped areas). Without the golf course, there would be no landscaped areas; without the improvements that support the golf course, there would be no golf course.

¶ 20 Indeed, the PTAB held that "only those portions of [petitioner's land] actually used to conserve landscaped areas satisfy the definition of open space land within the statute." In so doing, it apparently drew a distinction between land that directly conserves a landscaped area (*e.g.*, a fairway) and land that does so indirectly (*e.g.*, the parking lot, by facilitating the existence of the golf course and, hence, the fairway). Though it did not explain its reasoning on this point in detail, the PTAB seems to have held the position that only land that actually *is* a landscaped area qualifies as open space under the statute. Ordinary principles of statutory construction mandate that a court not read into a statute any conditions, limitations, or exceptions that do not appear in its plain language. *JPMorgan Chase Bank, N.A. v. Earth*

*Foods, Inc.*, 238 Ill. 2d 455, 461 (2010). Grafting this distinction onto the term "conserve" violates this principle.

¶ 21   Accordingly, we vacate the decision of the PTAB and remand for further proceedings consistent with this opinion. In this opinion, we have limited our inquiry to the meaning of section 10–155; what remains are factual determinations regarding the nature of the improvements on petitioner's property. On remand, those improvements should be evaluated to determine whether they conserve landscaped areas by facilitating the existence of the golf course.

¶ 22   Vacated and remanded with directions.