# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Lake County Board of Review v. Illinois Property Tax Appeal Board*,
### 2013 IL App (2d) 120429

---

| | |
|---|---|
| Appellate Court Caption | THE LAKE COUNTY BOARD OF REVIEW, Petitioner, v. ILLINOIS PROPERTY TAX APPEAL BOARD and ONWENTSIA CLUB, Respondents. |
| District & No. | Second District<br>Docket No. 2-12-0429 |
| Filed | May 6, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over the assessment of property related to a golf course, the Property Tax Appeal Board's assessment of respondent taxpayer's golf course property, including the land improved with a swimming pool, a stable, tennis courts, a parking lot and a clubhouse, as open space subject to the fair value of land used for open-space purposes was vacated and the cause was remanded to the Board for reconsideration based on the statute's contemplation that the open-space classification should be applied only to land that is actually a landscaped area and land that directly relates to and facilitates or conserves the existence of the landscaped area. |
| Decision Under Review | Petition for review of order of Property Tax Appeal Board Nos. 06-00614.001-C-3, 06-00614.004-C-3. |
| Judgment | Vacated and remanded. |

Counsel on
Appeal

Michael J. Waller, State's Attorney, of Waukegan (Tara H. Ori, Assistant State's Attorney, of counsel), for petitioner.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for respondent Illinois Property Tax Appeal Board.

Stephen Novack, Timothy J. Miller, and Brian E. Cohen, all of Novack and Macey LLP, of Chicago, for respondent Onwentsia Club.

Ares G. Dalianis, Michael J. Hernandez, and Scott R. Metcalf, all of Franczek Radelet, P.C., of Chicago, for *amici curiae*.

Panel

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1                                  I. INTRODUCTION

¶ 2      In *Onwentsia Club v. Illinois Property Tax Appeal Board*, 2011 IL App (2d) 100388, an earlier appeal in this case, we vacated a decision of the Property Tax Appeal Board (PTAB), construed section 10-155 of the Property Tax Code (Code) (35 ILCS 200/10-155 (West 2006)), and remanded to allow the PTAB to make additional findings. The PTAB has now done so and issued a decision finding substantial portions of land owned by respondent Onwentsia Club (Onwentsia) to be open space within the meaning of section 10-155. As a result, such land is to be valued "on the basis of its fair cash value, estimated at the price it would bring at a fair, voluntary sale for use by the buyer for open space purposes." 35 ILCS 200/10-155 (West 2006). Petitioner, the Lake County Board of Review, now appeals. We hold that the PTAB's application of the relevant portion of section 10-155 is overbroad; accordingly, we vacate and remand for further proceedings.[1]

¶ 3                                  II. BACKGROUND

¶ 4      In our original disposition of this matter, we set forth the following background

---

[1]*Amici curiae*, assessing officials and taxing districts, have filed a brief urging reversal of the PTAB's decision, which we have given due consideration.

-2-

information, which we repeat here to facilitate an understanding of this appeal:

"The facts in this case are largely undisputed. [Onwentsia] is a private golf club located in Lake Forest. The club occupies about 180 acres of land, which is divided into 10 tax parcels. Most of the land consists of an 18-hole golf course. However, other portions of the land are occupied by a swimming pool, clubhouse, horse riding area, stable, parking lot, driveway, and tennis courts. These improvements cover 8.72 acres.

Prior to 2006, the Lake County assessor's office granted open-space status to all property owned by a golf course. For other owners of land, only those portions of their property that were actually used for open-space purposes were granted open-space status. In 2006, the county began treating golf courses in the same manner that it treated other owners of land. Accordingly, it assessed improved portions of golf courses based on their fair-market value as a residential use. In 2006, open space was assessed at a rate of $1,000 per acre. Changing the designation of the improved portions of [Onwentsia's] land to residential resulted in substantial increases in their assessed value. For example, a 3.85-acre tax parcel that would have been assessed at $3,850 had it been granted open-space status for its improved portions was now assessed at $861,594." *Onwentsia Club*, 2011 IL App (2d) 100388, ¶¶ 3-4.

¶ 5    Our earlier decision turned on the construction of the following part of section 10-155: "Land is considered used for open space purposes if it is more than 10 acres in area and *** conserves landscaped areas, such as public or private golf courses ***." 35 ILCS 200/10-155 (West 2006). We held:

"[T]he plain language of the statute indicates that the legislature intended to grant open-space status not only to land that actually constitutes a landscaped area, but also to land that facilitates the existence of (*i.e.*, conserves) a landscaped area. Quite simply, land that *conserves* a landscaped area has a broader meaning than land that *is* a landscaped area." (Emphases in original.) *Onwentsia Club*, 2011 IL App (2d) 100388, ¶ 10.

We went on to explain:

"[W]e hold that land, even if it contains an improvement, may be granted open-space status if it conserves landscaped areas. A golf course typically requires certain appurtenances in order to function, such as parking areas, a building in which to conduct the course business (*i.e.*, a clubhouse), and perhaps a building to support the physical maintenance of the course. Without such improvements, many courses would not exist. Since they facilitate the existence of the golf course, and the course conserves landscaped areas, such improvements also can be said to conserve landscaped areas." *Onwentsia Club*, 2011 IL App (2d) 100388, ¶ 16.

We then noted that the PTAB apparently believed that only land that actually is a landscaped area could be deemed open space. *Onwentsia Club*, 2011 IL App (2d) 100388, ¶ 17. As such, relying on "this bright-line distinction between landscaped areas and the various improvements on petitioner's property, the PTAB found no need to analyze the nature of the particular improvements." *Onwentsia Club*, 2011 IL App (2d) 100388, ¶ 18. We disagreed with the distinction drawn by the PTAB: "If an improvement contributes to the nature of the land as a landscaped area, it fits within the statutory definition of open space. To the extent

improved land facilitates a golf course being a golf course, it conserves a landscaped area." *Onwentsia Club*, 2011 IL App (2d) 100388, ¶ 18; see also *Consumers IL Water Co. v. Vermilion County Board of Review*, 363 Ill. App. 3d 646, 652 (2006).

¶ 6        Therefore, we remanded to allow the PTAB to analyze the various improvements at issue in this appeal. We explained:

"We will not inquire into the particular improvements on [Onwentsia's] property. That requires a fact-intensive inquiry that would be better performed by the PTAB. To the extent the PTAB determines that an improvement in this case conserves a landscaped area by facilitating the existence of the golf course, it should grant open-space status to that portion of [Onwentsia's] property." *Onwentsia Club*, 2011 IL App (2d) 100388, ¶ 19.

On remand, the PTAB entered the following order, which reads in pertinent part as follows:

"After again reviewing the record and considering the testimony in light of the directions given by the court in *Onwentsia Club v. Illinois Property Tax Appeal Board*, 2011 IL App (2d) 100388, the Property Tax Appeal Board finds the improvements on various parcels under appeal including the clubhouse, the swimming pool, tennis facilities, golf learning center, parking lots, caddy shack, maintenance buildings/sheds, driveways and the halfway house for the golf course all facilitate the existence of the golf course. The Board finds that each of these improvements facilitates the subject golf course being and remaining a golf course and providing green space in this urban area."

The PTAB did not explain with any degree of specificity how any of these improvements facilitated the existence of the golf course. The only improvement excluded by the PTAB was a dormitory, as that fell within a statutory exception for residential uses. See 35 ILCS 200/10-155 (West 2006) ("Land is not considered used for open space purposes if it is used primarily for residential purposes."). The PTAB's application of section 10-155 is far too broad.

¶ 7                                    III. ANALYSIS

¶ 8        As a threshold matter, the parties disagree regarding the standard of review. Onwentsia contends that the manifest-weight standard (see *Best v. Best*, 223 Ill. 2d 342, 350 (2006)) applies because this court resolved all legal questions during the earlier appeal and only factual matters remained on remand. Petitioner asserts that the clearly erroneous standard applies, as this case presents a mixed question of law and fact, namely, the application of section 10-155 to the facts of this case by an administrative agency. See *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 392 (2001). Though we believe that the outcome of this point of contention would not be dispositive in this appeal, we agree with petitioner and will apply the clearly erroneous standard. Hence, we will disturb the PTAB's decision only if we are left with a firm and definite conviction that a mistake has been committed. *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395.

¶ 9        We have such a conviction in this case. When we announced our original opinion in this case, we envisioned a much more direct relationship between an improvement and a landscaped area than is implicit in the PTAB's order before an improvement would be

-4-

deemed to "conserve" the landscaped area. 35 ILCS 200/10-155 (West 2006). Indeed, as noted, we explained ourselves as follows:

> "[W]e hold that land, even if it contains an improvement, may be granted open-space status if it conserves landscaped areas. A golf course typically requires certain appurtenances in order to function, such as parking areas, a building in which to conduct the course business (*i.e.*, a clubhouse), and perhaps a building to support the physical maintenance of the course. Without such improvements, many courses would not exist. Since they facilitate the existence of the golf course, and the course conserves landscaped areas, such improvements also can be said to conserve landscaped areas." *Onwentsia Club*, 2011 IL App (2d) 100388, ¶ 16.

We did not intend to suggest that any tangential relationship between an improvement and a golf course would suffice. We recognized the difficulty in articulating precise criteria regarding the many and varied factual scenarios to which section 10-155 might apply. As such, we hoped that reasonable criteria would develop as the PTAB confronted concrete factual situations in the course of deciding future cases. See, *e.g.*, *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

¶ 10    However, the PTAB's virtually limitless interpretation of "conserve" would run afoul of the rule that, in interpreting a statute, we must presume that the legislature "did not intend absurdity, inconvenience or injustice." *People v. Jones*, 134 Ill. App. 3d 1048, 1051 (1985). Nothing in the statute indicates that the legislature intended to create an enormous tax shelter whereby any parcel of property associated in some way with a golf course would escape taxation. Moreover, it is axiomatic that we are to construe tax exemptions "narrowly and strictly in favor of taxation" (*Board of Education of Glen Ellyn Community Consolidated School District No. 89 v. Department of Revenue*, 356 Ill. App. 3d 165, 179 (2005)), and the burden to prove a tax exemption lies with the taxpayer (*Faith Builders Church, Inc. v. Department of Revenue*, 378 Ill. App. 3d 1037, 1042 (2008)). Accordingly, we hold that "conserve" as it is used in section 10-155 of the Code (35 ILCS 200/10-155 (West 2006)) must be construed narrowly, and, in turn, there must be some substantial nexus between the land for which the exemption is claimed and the landscaped area it is claimed to conserve. That is to say, the improvement in question must directly relate to and thus facilitate the existence of the golf course.

¶ 11    The precise contours of "conserve" are difficult to articulate prospectively outside some particular factual context, so we believe it best to proceed by means of ostensive definition. Thus, we will first examine those improvements on Onwentsia's property that are easier to classify. We perceive no nexus between the swimming pool, tennis facilities, and riding arena and stables and the golf course such that they could be said to facilitate its existence in any way. On the other hand, clearly, the halfway house[2] and the caddy shack relate directly to and thus facilitate the existence of the golf course. On remand, the PTAB should treat

---

[2]A halfway house on a golf course is "[a] building, generally between the 9th and 10th holes, providing light snacks and refreshments for golfers during their round." See http://en.wikipedia.org/wiki/Glossary_of_golf#H (last visited Mar. 18, 2013).

them accordingly.

¶ 12    Less clear are the maintenance buildings, parking lots, driveways, and clubhouse. To a large extent, whether such improvements "conserve" a landscaped area depend upon what portions of the Onwentsia Club they serve. For example, a maintenance building where the lawnmowers that cut the golf course are kept would facilitate the existence of the golf course; conversely, one that stores cleaning supplies for the pool would not. On remand, the PTAB should consider such questions.

¶ 13    Improvements with mixed uses present a special challenge. Given the many varied improvements that could exist, ultimately each will have to be assessed in light of the unique facts and circumstances relevant to the particular improvement in question. *Cf. State ex rel. Beeler Schad & Diamond, P.C. v. Ritz Camera Centers, Inc.*, 377 Ill. App. 3d 990, 998 (2007) ("Given the Department's consistent position that nexus determinations are a fact-specific inquiry and the myriad of considerations that must be undertaken to determine nexus based on the nature and extent of activities within the State, we cannot conclude that a retailer that does not collect and remit use tax, but does disclose that no use tax was collected, can 'knowingly' make a false record or statement necessary to create a liability under the Act."). Nevertheless, some general principles are relevant.

¶ 14    In some cases, different parts of an improvement may be easily discernable and severable for the purpose of ascertaining whether a portion conserves open space while another does not. See *Fox Valley Airport Authority v. Department of Revenue*, 164 Ill. App. 3d 415, 419 (1987) ("Here, all of the property identified as number 84-22-138 and 74% of the property identified as number 84-22-139 was leased for private farming and residential use, neither of which is for an airport authority purpose. [Citation.] We conclude that all of parcel number 84-22-138 and 74% of parcel number 84-22-139 is thus subject to tax."). In other cases, an improvement may function in such a manner as to make segregation impossible. Regarding how to proceed in such circumstances, we find an indication in the plain language of section 10-155 itself.

¶ 15    One of the exceptions set forth in section 10-155 is as follows: "Land is not considered used for open space purposes if it is *used primarily* for residential purposes." (Emphasis added.) 35 ILCS 200/10-155 (West 2006). Thus, the legislature manifested an intent to classify improvements with regard to their primary use. See *Metzger v. DaRosa*, 209 Ill. 2d 30, 34-35 (2004) ("The plain language of the statute is the best indicator of the legislature's intent."). In some cases, considering the primary use of the improvement may provide insight into whether it "conserves" a landscaped area. See also *People v. Young Men's Christian Ass'n of Chicago*, 365 Ill. 118, 124 (1936) ("The restaurant, cafeteria, laundry and haberdashery were purely incidental to the furnishing of the rooms in which the men should live and were likewise exempt from taxation."). Moreover, regarding some improvements, it might be useful to consider their purpose. *Cf. Quad Cities Open, Inc. v. City of Silvis*, 208 Ill. 2d 498, 515 (2004) (" '[F]or gain' as it is used in the Illinois Municipal Code does not include events organized and operated for charitable purposes ***."). We emphasize that we have not attempted to here set forth an exhaustive list of relevant factors and that the PTAB remains free to consider other factors as they are relevant.

¶ 16    Before concluding, we must comment upon one of Onwentsia's arguments. It contends that "the generation of revenue by the clubhouse facilitates the existence of the golf course" because, it intimates, the revenue is used to maintain the golf course. Such a rule would be too broad. As noted previously, we presume the legislature does not intend absurd results to flow from its statutory enactments. *Jones*, 134 Ill. App. 3d at 1051. Endorsing a rule that would encompass any improvement that generates revenue would violate this proposition. If a golf course were to operate a car dealership on a corner of its property, would it be entitled to favorable tax status simply because some of the money it generates might be spent on maintaining the course? Would a quarry that builds an adjacent golf course with some of its profits be entitled to a reduction in its property taxes? We cannot ascribe to the legislature such an intent.

¶ 17                                IV. CONCLUSION

¶ 18    Questions remain regarding the maintenance buildings, parking lots, driveways, and clubhouse. We believe the best course is to remand this cause to the PTAB so that it may reconsider its findings regarding these improvements (and any others not specifically addressed) and issue an order consistent with this disposition. The PTAB should determine on remand whether there is some substantial nexus–as contemplated in this opinion–between the improvements at issue and the golf course such that the improvements relate directly to the course and facilitate its existence. In so doing, the PTAB may also consider whatever additional factors it finds relevant to the inquiry that are consistent with this opinion. As this case deals with a developing legal standard, the PTAB may, in its discretion, allow the parties to submit additional evidence. Accordingly, the decision of the PTAB is vacated, and this cause is remanded for further proceedings consistent with this opinion.

¶ 19    Vacated and remanded.